

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-12-00023-CV**

| | | |
|---|---|---|
| In the Matter of J.G. | § | From the 323rd District Court |
| | § | of Tarrant County (323-94678J-11) |
| | § | January 10, 2013 |
| | § | Opinion by Justice McCoy |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that appellant J.G. shall pay all costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____

Justice Bob McCoy



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**


**NO. 02-12-00023-CV**


IN THE MATTER OF J.G.


----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In one point, Appellant J.G. appeals the trial court's judgment that he engaged in delinquent conduct by failing to stop and render aid to two victims following a traffic accident that he caused. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II.  Factual and Procedural Background

On October 31, 2010, shortly before midnight, J.G. was driving a Mercedes convertible westbound on I-30; Joel Perry was driving an SUV with his father James Perry as a passenger.  The SUV was going sixty-five miles per hour in the same direction as J.G. when J.G. hit it.  Joel estimated that the SUV flipped over three or four times before sliding down around 150 feet on the driver's side.

According to Joel's testimony, J.G. had driven "significantly faster" than the other cars on the road, at "well over 100 miles an hour."  After rear-ending Joel's SUV, J.G. proceeded down the road, still traveling at a high rate of speed, for approximately one-quarter of a mile before he hit a light pole.  After hitting the light pole, J.G. started walking or running[2] away from the accident scene.  J.G. was apprehended about one-quarter of a mile to the west of his vehicle and brought back to the scene.

Joel sustained bruising and a partial herniated disk in his lower back, and James, who has multiple sclerosis, was shaken up and left hanging immobilized on the passenger side immediately after the accident, and he sustained injuries to his knee and ankle.  James and Joel remained at the scene until James was transported away by ambulance.  J.G. stipulated that he was intoxicated at the time of the collision.

---

[2]James testified that he "saw someone run from where the other car had hit the light standard in the median across the highway to the south."

The trial court adjudged J.G. delinquent of two counts of failure to stop and return or remain at the scene of an accident (one for each vehicle occupant) and driving while intoxicated and placed him on community supervision. J.G. appeals the determination of both counts of failure to stop and return or remain at the scene of an accident.

### III. Failure to Stop and Render Aid

J.G. argues that there is no evidence or insufficient evidence to establish that he had the ability to stop and render aid following the automobile accident. J.G. asserts that the question at issue on appeal is whether "[J.G.] could have returned to the vehicle to render aid given the almost immediate arrival of emergency personnel and the distance between his vehicle and the vehicle he struck."

The standard of review for juvenile delinquency appeals is the same as the criminal sufficiency review. *In re M.C.S., Jr.*, 327 S.W.3d 802, 805 (Tex. App.—Fort Worth 2010, no pet.). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App.

4

2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  *Id.*  The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument.  *See Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

In its delinquent conduct petition, the State alleged that J.G. intentionally or knowingly drove a vehicle that became involved in an accident resulting in injury to James and Joel Perry and then, knowing the accident had occurred, intentionally or knowingly left the accident scene without giving his name and address to any person and without rendering reasonable assistance to James and Joel when it was apparent that they were in need of medical treatment.  *See* Tex. Transp. Code Ann. §§ 550.021, .023 (West 2011).  Section 550.021 also requires that the operator of a vehicle involved in an accident resulting in personal injury or death *immediately* stop at the accident scene or *immediately* return and remain at the scene until he has complied with the requirements of transportation code section 550.023.  *See id.* § 550.021(a)(1)–(3); *see also id.* § 550.023 (requiring the operator to give his name and address, among other identifying information, to any person injured or the operator or occupant of or person attending a vehicle involved in the collision and to provide any person

5

injured in the accident with reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation); *Huffman v. State*, 267 S.W.3d 902, 909 (Tex. Crim. App. 2008) (stating that section 550.021(a)'s requirements are serial requirements that all relate, step-by-step, to what an actor must do with respect to the scene of an accident).

The evidence is sufficient to show that J.G. did not comply with section 550.021's requirements: He did not immediately stop after the collision or immediately return to the scene; instead, he left the scene at a high rate of speed until he ran into a light pole a quarter of a mile away and then continued to walk or run *away* from the accident scene.[3] And because J.G. did not even try to immediately stop or immediately return to the accident scene, he could not give his information or render reasonable assistance to James or Joel.[4] *See Huffman*, 267 S.W.3d at 909. Therefore, because the evidence is sufficient to support the trial court's finding, we overrule J.G.'s sole point.

---

[3]J.G.'s complaint that he could not return to the scene because he was intoxicated and would have had to walk against traffic at night on the interstate for one-quarter of a mile is without merit because he managed to walk *away* from the accident scene for another quarter of a mile.

[4]Although J.G. argues that he could not have returned to render aid before emergency vehicles arrived, the timing of the arrival of emergency personnel here is irrelevant when J.G. did not even attempt to return to the scene and instead walked away from it.

## V.  Conclusion

Having overruled J.G.'s sole point, we affirm the trial court's judgment.


                                        BOB MCCOY
                                        JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DELIVERED:  January 10, 2013